**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                    Case No.:    3:13-cr-197-J-32JBT

WILLIAM ROLAND BAKER

_____/

**<u>ORDER</u>**

This case is before the Court on Defendant William Roland Baker's
Motion for Compassionate Release (Doc. 184 (Motion); Doc. 184-1 through 184-
6 (Exhibits)), which he filed through counsel. The United States has responded
in opposition (Doc. 191, Response), and Defendant has filed a reply (Doc. 192
(Reply); Doc. 192-1 through 192-4 (Reply Exhibits)). The Court has considered
the parties' arguments and exhibits, including Defendant's supplemental
medical records (Doc. 188; Doc. 195).

Defendant is a 69-year-old inmate incarcerated at Jesup FCI, nearing the
end of a 120-month prison sentence for two counts of possession of child
pornography. (<u>See</u> Doc. 137, Judgment). According to the Bureau of Prisons
(BOP), he is scheduled to be released from prison on May 12, 2022. Defendant
seeks early release under the compassionate release statute, 18 U.S.C. §
3582(c)(1)(A), because of the Covid-19 pandemic, his advanced age, and because
he suffers from various health problems. Among Defendant's underlying

1

conditions are Type 2 diabetes, chronic kidney disease, obesity, hypertension, and a history of heart disease. In addition, Defendant has degenerative disc disease of the lumbar spine and has some difficulty with mobility, as he walks with a cane (Doc. 195-1 at 5) and occasionally requires a wheelchair (see Doc. 195-1 at 26; Doc. 192-1 at 2). The United States opposes the Motion because it argues that Defendant's conditions do not prevent him from providing self-care, the BOP is adequately responding to Covid-19, Defendant is a danger to the community, and the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence. (Doc. 191).

On November 5, 2020, the Court held a telephonic hearing on Defendant's Motion. (Doc. 194, Minute Entry). At the hearing, the Court heard argument from the parties and had an opportunity to gather additional information. The Court then requested that the Probation Office investigate the suitability of Defendant's release plan, which is to reside at his family home on a three-acre property in Jacksonville, Florida. The Probation Office has completed that investigation. For the reasons below, the Motion is due to be granted.

## I.    Compassionate Release

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, as amended by the First Step Act, § 3582(c)(1)(A) provides:

> **(A)**   the court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of
> the Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is earlier, may
> reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that
> does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section
> 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)**   extraordinary and compelling reasons warrant
> > such a reduction …
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Pursuant to its authority under § 3582(c), the United States Sentencing

Commission has promulgated a policy statement governing the circumstances

when compassionate release is appropriate. See U.S.S.G. § 1B1.13. The policy

statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18
> U.S.C. § 3582(c)(1)(A), the court may reduce a term of
> imprisonment (and may impose a term of supervised release with
> or without conditions that does not exceed the unserved portion of
> the original term of imprisonment) if, after considering the factors
> set forth in 18 U.S.C. § 3553(a), to the extent that they are
> applicable, the court determines that—
>
> **(1)**   **(A)** Extraordinary and compelling reasons warrant the
> reduction; or
> **(B)** The defendant (i) is at least 70 years old; and (ii) has
> served at least 30 years in prison pursuant to a sentence

imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

**(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The Sentencing Commission has not updated the policy statement since the passage of the First Step Act.

The guideline's commentary provides that "extraordinary and compelling reasons" for compassionate release may exist based on the defendant's medical condition, age, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. 1. As relevant here, these circumstances include:

**(A) Medical Condition of the Defendant.—**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment,

or

**(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment

4

> of a correctional facility and from which he or she is not
> expected to recover.
>
> **(B) Age of the Defendant.--**The defendant (i) is at least 65
> years old; (ii) is experiencing a serious deterioration in
> physical or mental health because of the aging process;
> and (iii) has served at least 10 years or 75 percent of his
> or her term of imprisonment, whichever is less.

Id., cmt. 1(A), (B).[1]

When a defendant moves for compassionate release on his own behalf, the compassionate release statute contains an exhaustion requirement. A district court can reduce the term of imprisonment "upon motion of the defendant" only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). As the Sixth Circuit Court of Appeals has held, "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days [of submitting a request to the warden], no matter the appeals available to them." United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020); accord

---

[1]     The Court recognizes there is a split of authority over whether § 1B1.13 is an "applicable" policy statement for defendant-initiated motions under § 3582(c)(1)(A), including whether the list of extraordinary and compelling reasons contained in U.S.S.G. § 1B1.13, cmt. 1 is controlling. See United States v. Ruffin, 978 F.3d 1000, 1006–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020). The Court need not resolve that issue here. For purposes of this Order, the Court assumes the policy statement is still binding. If it is not binding, such that the Court has greater latitude to identify "extraordinary and compelling reasons," its decision would be the same.

United States v. Smith, — F. Supp. 3d —, 2020 WL 5106694, at *3–4 (M.D. Fla. Aug. 31, 2020).

## II.    Defendant has satisfied the exhaustion requirement

The United States concedes that Defendant has satisfied the exhaustion requirement (Doc. 191 at 3), and the Court agrees. Defendant submitted a request for compassionate release to the warden of his facility on June 25, 2020. More than 30 days later, on September 14, 2020, Defendant filed the motion for compassionate release. (Doc. 184). As such, Defendant has satisfied § 3582(c)(1)(A)'s 30-day exhaustion alternative.

## III.    Defendant has shown extraordinary and compelling reasons

The United States also concedes that two of Defendant's medical conditions qualify as extraordinary and compelling reasons for compassionate release in light of the Covid-19 pandemic (Doc. 191 at 4–10), and the Court agrees as well. It is undisputed that Defendant suffers from Type 2 diabetes and chronic kidney disease, both of which the Centers for Disease Control (CDC) identify as conditions that increase the risk of serious illness from Covid-19.[2] But these are not the only conditions that expose Defendant to greater risk from coronavirus. According to the CDC, advanced age increases the risk of severe

---

[2]    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

illness or death from Covid-19 as well. The CDC reports that eight out of ten Covid-19-related deaths have been among those aged 65 and older. At 69 years old, Defendant's age puts him at heightened risk. Moreover, the medical records state that Defendant has "had 2 MI's [myocardial infarctions, or heart attacks] in the past," as well as a history of hypertension and coronary artery disease ("CAD"). (Doc. 195-1 at 10). Defendant has undergone two angioplasties to unblock the arteries around his heart. (Doc. 184 at 6; see also Doc. 195-1 at 39). The CDC includes heart conditions like coronary artery disease and cardiomyopathies among the conditions that increase the risk of severe illness or death from Covid-19. In light of the current pandemic, Defendant's advanced age, and his underlying conditions, Defendant has established that he suffers from serious medical or physical conditions that qualify as extraordinary and compelling reasons for compassionate release. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13, cmt. 1(A).

Although the United States concedes that Defendant's conditions qualify as extraordinary and compelling circumstances, it argues that Defendant's health problems do not impair his ability to provide self-care and that the BOP is adequately responding to the virus. However, the record casts doubt on the first argument and the second argument is not dispositive. CDC-recommended protocols call for an elderly, medically compromised person like Defendant to practice social distancing and proper hygiene to protect himself from

coronavirus. However, that task is inherently difficult – if not impossible – in a prison setting. Unlike members of the general public, inmates are confined in close quarters with hundreds of other people under conditions that are not conducive to proper hygiene or maintaining safe distances. In addition, the record indicates that Defendant indeed has difficulties with mobility and providing self-care. As noted previously, Defendant walks with a cane (Doc. 195-1 at 5) and has occasionally required the use of a wheelchair (id. at 26). As the Motion explains: "Mr. Baker requires the help of other inmates to get out of bed, shower and perform other daily activities. Sometimes other inmates are willing to help, sometimes they are not. Prison staff do not assist Mr. Baker despite his obvious struggles to even walk." (Doc. 184 at 10). Moreover, recent medical records suggest that Defendant has had trouble controlling his diabetes. Twice in recent weeks, Defendant has required medical attention because of abnormal blood sugar levels. (Doc. 195-1 at 1–5).

With respect to BOP's response to Covid-19, the Court recognizes that the BOP has implemented a comprehensive plan to mitigate the spread and the effects of the coronavirus. However, the Court need not wait until the virus has overwhelmed Defendant's facility before acting, at which point it may be too late to afford relief. The Court also notes that the number of cases at Jesup FCI has risen lately. A few weeks ago, Jesup FCI reported zero Covid-19 cases among inmates. Today, Jesup FCI reports that 13 inmates are positive for the

virus.[3]

The Court agrees with the Third Circuit Court of Appeals that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). But Covid-19, when combined with the particular circumstances of an inmate and the conditions at his facility, may present a different picture. Under the unique circumstances here, the Court concludes that Defendant has shown extraordinary and compelling reasons for compassionate release.

## IV.   Defendant is unlikely to be a danger to the community

The Court must consider an additional question: whether Defendant is a danger to the safety of another person or to the community, as provided by 18 U.S.C. § 3142(g). See U.S.S.G. § 1B1.13(2). In doing so, the Court considers such factors as "the nature and circumstances of the offense charged," "the weight of the evidence against the person," the "history and characteristics of the person," including the person's "mental and physical condition," as well as "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

---

[3]       https://www.bop.gov/coronavirus/.

To be sure, Defendant's convictions for possessing child pornography are serious offenses. Troubling still, Defendant pleaded no contest in 1995 to lewd and lascivious conduct with a child under the age of 16 years old, for which the state court withheld adjudication and sentenced Defendant to three years of probation. (Doc. 131, Presentence Investigation Report [PSR] at ¶ 40). The Court has given these facts careful consideration in weighing its decision.

However, three reasons persuade the Court that Defendant is unlikely to pose a danger to another person or to the community if granted compassionate release. First is Defendant's advancing age, frail health, and declining mobility. These factors would limit his ability to commit a contact offense (even if he were inclined to do so). Second is Defendant's release plan to reside with his wife at his family home in Jacksonville, Florida, which "is zoned rural residential, is over 3 acres, and falls within local guidelines for sex offender registration." (Doc. 184 at 8). The Probation Office investigated the suitability of the release plan and reports that the family is aware of the restrictions Defendant will be subject to, including no contact with minors, and that the family is supportive. Third, the Court is confident that the conditions of supervised release can limit the risk that Defendant will reoffend. Defendant will know that if he violates sex offender registration laws or the conditions of supervised release, he will be subject to reimprisonment. Defendant's computer usage will be severely restricted and monitored, making it unlikely he would commit another child

pornography offense. The Court believes that these conditions, along with the deterrent of reimprisonment should Defendant violate these conditions, are adequate to protect the public.

## V.     18 U.S.C. § 3553(a) supports compassionate release

Finally, the Court must consider whether the sentencing factors under 18 U.S.C. § 3553(a) support reducing Defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). In view of all the applicable § 3553(a) factors, the Court concludes that a reduction is warranted.

The Court reiterates that it has considered the nature and circumstances of the offenses of conviction, as well as Defendant's criminal history. Possession of child pornography is a serious crime, as is Defendant's 1995 conviction for lewd and lascivious conduct with a child under the age of 16. Ordinarily, these factors would weigh strongly under § 3553(a) against granting compassionate release. However, the nature of the conviction is not an absolute bar to relief under § 3582(c)(1)(A) where, as here, other factors weigh strongly in favor of reducing the defendant's sentence. See, e.g., United States v. Asher, 467 F. Supp. 3d 1285 (N.D. Ga. 2020) (granting compassionate release to a 54-year-old inmate convicted of distributing and receiving child pornography, who had Parkinson's disease, chronic heart disease, and hypertension, and had served 74% of his full-term prison sentence); United States v. Feucht, 462 F. Supp. 3d

1339 (S.D. Fla. 2020) (granting compassionate release to a 63-year-old inmate convicted of distributing and possessing child pornography, who had Type 2 diabetes, obesity, hypothyroidism, and hypertension, and who had served over 112 months of a 151-month prison sentence).

First, Defendant has served a significant portion of his sentence. He has been in custody for over 84 months, dating from his arrest on November 4, 2013 (see Doc. 131 at p. 1). That equates to 70% of his full term of imprisonment (and well over 80% of his actual time to be served). According to the BOP, Defendant is due to be released from prison in just under 18 months (on May 12, 2022), and he will be eligible for home confinement in just under a year (on November 12, 2021) (see Doc. 184 at 4; Doc. 184-2 at 1). Thus, granting compassionate release will not significantly diminish the length of Defendant's sentence, and by extension, minimize the severity of the offense.

Second, Defendant has conducted himself well in prison. He has not received any incident reports during his time in custody, earning him a male pattern risk score of Minimum. (Doc. 192-4). Meanwhile, Defendant, who is a traffic engineer, has used his time in prison to complete continuing education courses. While in custody, he "has completed 11 professional engineering continuing education courses certified by the Florida Board of Professional Engineers," "has been awarded 36 certified credit hours toward his continuing professional development," and has "kept his professional license current." (Doc.

184 at 8).

Third, Defendant's declining health, considered along with the types of sentences available, persuade the Court that a sentence reduction is warranted. See 18 U.S.C. §§ 3553(a)(1), (a)(3). Upon release from prison, Defendant will still be subject to supervision. And as a condition of supervised release, the Court can impose a period of home confinement. U.S.S.G. § 5F1.2. Home confinement will allow Defendant to serve the remainder of his sentence in a safer environment than Jesup FCI. Moreover, as discussed in Part IV, the Court believes that Defendant's age, health, and the conditions of supervised release will protect the public and limit the risk of Defendant reoffending.

Finally, Defendant's wife and daughters inform the Court that they are ready to help provide for Defendant's healthcare needs and to ensure his compliance with the terms of his release. (See Doc. 184-6, Letter). After investigating the suitability of Defendant's release plan, the Probation Office advised the Court that Defendant's family was aware of the conditions of release, that they are supportive, and that the family was not resistant to the Probation Office performing its job.

Having considered each of the applicable § 3553(a) factors, including the history and characteristics of the defendant, the types of sentences available, and the need for the sentence to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and promote respect for the law,

the Court concludes that a sentence reduction is appropriate. Under the particular circumstances of this case, Defendant qualifies for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is hereby **ORDERED:**

1. Defendant William Roland Baker's Motion for Compassionate Release (Doc. 184) is **GRANTED**.

2. Defendant's previously imposed sentence of imprisonment of 120 months is reduced to **TIME SERVED plus 7 days**, for a release date of **December 7, 2020**. If possible, Defendant should be quarantined pending his release.

3. Under 18 U.S.C. § 3582(c)(1)(A), Defendant is ordered to serve a "special term" of supervised release of **18 months** (reflecting the remainder of his term of imprisonment with good-time credits), to be followed by the term of **120 months** of supervised release stated in the Judgment (Doc. 137), for a total term of **138 months** of supervised release. After 60 months of successful completion of supervised release, Probation should evaluate whether continued supervision is appropriate.

4. Pursuant to 18 U.S.C. § 3583(d) and U.S.S.G. § 5F1.2, Defendant shall serve the 18-month special term of supervised release under home confinement at his residence. Otherwise, the standard and special

conditions of supervised release contained in his Judgment (Doc. 137) shall apply.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of November, 2020.



TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Counsel of record
Defendant
Mrs. Penney Baker (spouse)
United States Marshals Service
United States Probation Office
United States Bureau of Prisons
Warden, Jesup FCI